185 P.3d 272

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles T. WARBURTON, Defendant–Appellant.**

No. 32601.

Court of Appeals of Idaho.

May 13, 2008.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Charles T. Warburton appeals from his judgment of conviction for conspiracy to deliver a controlled substance, methamphetamine. For the reasons set forth below, we vacate the judgment.

## I.

### FACTS AND PROCEDURE

In January 2003, Warburton asked a friend to purchase methamphetamine for him. The friend agreed and Warburton gave him the funds necessary[1] to purchase up to an ounce of methamphetamine. However, before the friend could purchase the methamphetamine Warburton had requested, the friend was arrested on drug charges. The friend became a confidential informant (CI or CI 198) for the police.

After meeting with the police, the CI called Warburton and informed him that he had purchased three-quarters of an ounce of methamphetamine. The CI agreed to meet Warburton at a local truck stop. The police provided the CI with a three-quarter-ounce package of coffee creamer wrapped in duct tape and made to resemble a package of drugs. The police also supplied the CI with $300. At the truck stop, the CI—who was equipped with a body transmitter allowing the police to record the conversation—gave Warburton the package of coffee creamer and asked Warburton if he wanted the $300 back or if he wanted the CI to use it to try and buy more methamphetamine. Warburton responded that he wanted the CI to purchase more methamphetamine with the money.

Warburton was arrested at the truck stop and was originally charged with solicitation of delivery of a controlled substance. However, after reviewing the taped conversation between Warburton and the CI, the district court dismissed the solicitation charge. Warburton was then charged by indictment with conspiracy to deliver a controlled substance, methamphetamine. I.C. §§ 37–2732(a)(1)(A), 18–1701.

Warburton proceeded to trial before a jury and he was found guilty of conspiracy to deliver a controlled substance, methamphetamine. Warburton appeals.

## II.

### ANALYSIS

Warburton argues that the state failed to present substantial and competent evidence that the co-conspirators intended the methamphetamine to be delivered to a person not involved in the conspiracy. The state counters by arguing that the evidence presented at Warburton's trial was such that the jury could have reasonably inferred that the CI and Warburton intended the methamphetamine to be delivered to a third party.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal

---

1. At trial, the friend testified that Warburton gave him between $500 and $600. However, the officer who arrested the friend testified that the friend had $1,500 on him when he was arrested and that the friend told the officer that Warburton had given him all of that money.

where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito,* 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App.1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito,* 131 Idaho at 385, 957 P.2d at 1101; *Knutson,* 121 Idaho at 104, 822 P.2d at 1001.

Warburton was charged with conspiracy to deliver a controlled substance, methamphetamine. I.C. §§ 37–2732(a)(1)(A), 18–1701.[2] The Uniform Controlled Substances Act defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship." I.C. § 37–2701(g). Conspiracy is defined as:

> If two (2) or more persons combine or conspire to commit any crime or offense prescribed by the laws of the state of Idaho, and one (1) or more of such persons does any act to effect the object of the combination or conspiracy, each shall be punishable upon conviction in the same manner and to the same extent as is pro-

vided under the laws of the state of Idaho for the punishment of the crime or offense that each combined to commit.

I.C. § 18–1701.

■ To convict a defendant of a conspiracy charge, the state must prove, among other things, the intent necessary to commit the underlying substantive crime. *See State v. Lopez,* 140 Idaho 197, 199, 90 P.3d 1279, 1281 (Ct.App.2004); *State v. Munhall,* 118 Idaho 602, 606, 798 P.2d 61, 65 (Ct.App.1990); *State v. Martin,* 113 Idaho 461, 466, 745 P.2d 1082, 1087 (Ct.App.1987). In *Lopez,* the defendant was charged with conspiracy to traffic heroin. The state was required to prove that Lopez had the intent necessary to commit the underlying substantive offense. Therefore, the state had to prove that "Lopez had the requisite intent to traffic heroin." *Lopez,* 140 Idaho at 199, 90 P.3d at 1281.

In this case, Warburton was charged with conspiracy to deliver a controlled substance. Therefore, the state was required to prove that Warburton had the requisite intent to deliver the methamphetamine "to another."[3] Although the state concedes that it was required to prove the intent to deliver the methamphetamine to someone outside of the conspiracy, it argues that there was "substantial evidence at trial of Warburton's intent to deliver methamphetamine."

We need not determine whether this evidence was sufficient for the jury to infer Warburton's intent to deliver the methamphetamine to a third party, because this was

---

**2.** Warburton was charged and found guilty under Idaho's general conspiracy statute instead of the conspiracy statute specific to the Uniform Controlled Substances Act, I.C. § 37–2732(f).

**3.** Warburton urges this Court to adopt Wharton's Rule. Generally, Wharton's Rule prohibits charging a conspiracy for agreeing to commit an underlying crime where the underlying crime itself contains an element requiring an agreement between two persons. *See* 2 Wayne R. LaFave, Substantive Criminal Law § 12.4(c)(4) (2d ed.2003). Wharton's Rule has been applied to conspiracy to commit dueling, bigamy, adultery, incest, pandering, gambling, buying and selling contraband goods, and giving and receiving of bribes. *Id.* However, because of its complexity and the inconsistent manner in which Wharton's

Rule has been applied in other jurisdictions, we decline Warburton's invitation to adopt this Rule. Furthermore, the use of Wharton's Rule is not necessary for our determination of this case.

The state's brief acknowledges that "a conspiracy under Idaho's general conspiracy statute requires that both conspirators have the intent to deliver; it is not enough that one intended to deliver and the other to receive." Therefore, the state concedes that it was required to prove that Warburton intended to deliver the drugs to another—someone outside of the conspiracy. *See State v. Miller,* 131 Wash.2d 78, 929 P.2d 372, 378 (1997) (holding that "there can be no conviction for conspiracy to deliver a controlled substance unless there is evidence of delivery or intent to deliver to a third person").

never the state's theory of the case, nor was it something the jury was instructed to find.

The indictment Warburton was charged under reads, in pertinent part:

> That the Defendant, Charles T. Warburton, and CI 198 on or between the 6th day of January 2003 and the 7th day of January 2003 in the County of Elmore, State of Idaho and elsewhere, did willfully and knowingly conspire, combine, confederate and agree to deliver a controlled substance, to wit: Methamphetamine.

### OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts among others, were committed within Elmore County and elsewhere:

1. On or about January 6, 2003, CI 198 drove into Elmore County and met with Defendant at his residence in Elmore County.

2. While at Defendant's residence, Defendant approached CI 198 and requested CI 198 to purchase some methamphetamine.

3. Defendant gave CI 198 one thousand and five hundred dollars in cash to purchase an ounce of methamphetamine.

4. CI 198 left from Elmore County and drove to Rupert, Idaho where he purchased a small amount of methamphetamine.

5. On or about January 6, 2003, CI 198 returned to Elmore County where he was arrested. Prior to arrest CI 198 went back to Defendant's house and made arrangements to purchase methamphetamine with the money Defendant had already given him.

6. On or about January 7, 2003, CI 198 contacted Defendant by telephone and made arrangements to meet him at the [truck stop] to give Defendant the alleged drugs that CI 198 was to purchase.

7. CI 198 went to the [truck stop] and was met there by Defendant where he handed him the alleged methamphetamine and Defendant drove off.

At trial, the jury was instructed, in part:

> In order for the Defendant to be guilty of conspiracy, the State must prove each of the following:
>
> One, on or between January 6, 2003, and January 7, 2003; two, in the State of Idaho, County of Elmore; three, the Defendant, Charles Warburton, and [the CI] and/or other unknown person agreed; four, to commit the crime of delivery of methamphetamine; five, the Defendant intended that at least one of the crimes would be committed; and six, one of the parties to the agreement performed at least one of the following acts....

In its opening statement, the state informed the jury, in part:

> Now, the crime in this case is conspiracy to deliver a controlled substance. The Court is going to tell you about what conspiracy means and what that entails a little later on. But just at the very basis, what we are talking about is an agreement to purchase some methamphetamine. An agreement between the Defendant and another person.
>
> That other person in this case is a man named [the CI]. He is going to come in here and he's going to tell you about that agreement, how it happened and what happened after that. He is going to tell you about how they agreed that [the CI] would go get some methamphetamine, how the Defendant gave him some money to go get some methamphetamine, how [the CI] got busted on his way to get the methamphetamine and how he ended up becoming a confidential informant.

In response to Warburton's I.C.R. 29 motion for judgment of acquittal, the state argued, in part:

> Your Honor, the State believes it has shown what's needed to prove this crime. [The CI] testified that at the [truck stop] and later that night at Mr. Warburton's mother's home, Mr. Warburton and he agreed that he would go and get methamphetamine for Mr. Warburton.

At closing argument, the state informed the jury, in part:

> [The CI] testified that both at the [truck stop] and then again at Mr. Warburton's mother's home, they agreed that [the CI] would go to get methamphetamine for Mr. Warburton and Mr. Warburton gave him some money to help him accomplish that. That's the agreement that we are talking about. That's what I have to prove happened.
>
> . . . .
>
> . . . all of that corroborates [the CI's] testimony that there was an agreement for him to purchase the methamphetamine for the Defendant.

At no time did the state argue or present any evidence to show that Warburton intended to deliver the methamphetamine to a third party. Furthermore, the jury was never instructed that it needed to find that Warburton intended to deliver the methamphetamine to a third party. Instead, the state argued and the jury was asked to find only that Warburton and the CI agreed that the CI would deliver methamphetamine to Warburton.

Despite the state's argument that there was sufficient evidence in the record to assume that Warburton intended to deliver the methamphetamine to another, we cannot conclude that the jury implicitly found something that it was not asked to find. Further-

more, because the state's theory of the case did not necessitate finding the requisite intent to deliver to a third party—but instead relied only on the agreement to deliver from the CI to Warburton—we decline to hold that there was sufficient evidence to support this alternate theory. We cannot conclude that the jury reached the verdict on a legal theory that was not submitted to it and, accordingly, vacate Warburton's judgment of conviction.

### III.

### CONCLUSION

The state concedes that it was required to prove that Warburton intended to deliver the methamphetamine to a third party. However, that element was not argued to the jury, nor was the jury instructed to find that element. Accordingly, we vacate Warburton's judgment of conviction for conspiracy to deliver methamphetamine.

Chief Judge GUTIERREZ and Judge LANSING, concur.